UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOAN HANSEN,

                               **MEMORANDUM & ORDER**

              Plaintiff,                19-CV-04519 (DRH)(AKT)

      -against-

MATTHEW MILLER, RACHEL MILLER, STILLWELL
ROAD, INC., GILBERT L. BALANOFF, GILBERT L.
BALANOFF, P.C., DOUGLAS M. LIEBERMAN,
MARKOTSIS & LIEBERMAN, P.C.,

                    Defendants.
-------------------------------------------------------------------X

**APPEARANCES:**

**For Plaintiff:**

Paula A. Miller, P.C.
308 West Main Street, Suite 204
Smithtown, New York 11787
By:    Paula A. Miller, Esq.

**For Defendants Matthew Miller, Rachel Miller, and Stillwell Road, Inc.:**

Law Office of Steven Cohn, P.C.
One Old Country Road, Suite 420
Carle Place, New York 11514
By:    Alan S. Zigman, Esq.
        Steven Cohn, Esq.

**For Defendants Gilbert L. Balanoff and Gilbert L. Balanoff, P.C.:**
L'Abbate, Balkan, Colavita & Contini, L.L.P.
1001 Franklin Avenue
Garden City, New York 11350
By:    Nicole Feder, Esq.

**For Defendants Douglas M. Lieberman and Markotsis & Lieberman, P.C.:**
Catalano Gallardo & Petropoulos, L.L.P.
100 Jericho Quadrangle, Suite 326
Jericho, New York 11753
By:    Timothy M. Gallagher, Esq.

**HURLEY, Senior District Judge:**

Plaintiff Joan Hansen ("Plaintiff" or "Hansen") brought this action against Defendants Matthew Miller ("Matthew"), Rachel Miller ("Rachel"), Stillwell Road, Inc. ("SRI"), Gilbert L. Balanoff ("Balanoff"), Gilbert L. Balanoff, P.C. ("Balanoff, P.C."), Douglas M. Lieberman ("Lieberman"), Markotsis & Lieberman, P.C. ("M&L") (collectively, "Defendants").  Plaintiff's federal claims relate to a foreclosure action brought by Rachel naming SRI and Plaintiff as defendants in Nassau County Supreme Court ("Foreclosure Action").  In particular, Plaintiff brings thirteen causes of action for: 1) fraud in the enforcement of the mortgage at issue in the foreclosure action; 2) fraud upon the court; 3) declaratory judgment that the foreclosure is a nullity;[1] 4) declaratory judgment reattaching Plaintiff's lien on the property at issue in the Foreclosure Action; 5) the imposition of a constructive trust for Plaintiff's benefit; 6) unjust enrichment; 7) a declaratory judgment compelling the sale of the property as contemplated in the loan agreement, referred to herein as the "Hansen Agreement" and described in additional detail below; 8) an accounting of the net profit due to Plaintiff under the Hansen Agreement; 9) and 10) collusion and deceit upon the Court pursuant to New York State Judiciary Law § 487; 11) and 12) negligence; and 13) legal fees and costs.  Presently before the Court are three motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6); one brought by Matthew, Rachel, and SRI (collectively, the "Miller Defendants"), a second brought by Balanoff and Balanoff, P.C. (collectively, the "Balanoff Defendants"), and a third brought by Lieberman and M&L (collectively, the "Lieberman Defendants").  For the reasons set forth below, the motions to dismiss are granted.

---

[1] Plaintiff withdrew this cause of action in response to the motions currently before the Court.  (Pl.'s Mem. in Opp. to Miller Defs.' MTD [ECF No. 44-11] at 13 n.12.)

## BACKGROUND

The following allegations are taken from the Complaint ("Compl.") and assumed true for purposes of this motion, unless otherwise noted.

I.      *Hansen Loan*

This action arises out of a state court proceeding between Plaintiff, Rachel, and SRI regarding a property located in Laurel Hollow, New York.  On or about October 19, 2007, Matthew entered into a contract of sale to purchase the property located at 171 Stillwell Lane in Laurel Hollow, New York (the "Premises").  (Compl. [ECF No. 1] ¶ 15.)  Matthew, Plaintiff's co-worker in the mortgage industry, approached Plaintiff about "loaning him money toward the purchase price of the Premises."  (*Id.* ¶¶ 16-17.)  Plaintiff agreed to loan Matthew, through his company, SRI, $300,000 to be used "toward the price of the Premises and the construction of a residential dwelling thereon."  (*Id.* ¶ 18.)  Matthew provided Plaintiff with documents pertaining to the transaction, including the contract of sale, a term sheet from Patriot National Bank for a purchase and construction loan, estimated building costs, survey, and break down of other costs of the project.  (*Id.* ¶ 24.)

On July 8, 2008, Plaintiff loaned SRI $300,000, and SRI executed and delivered to Plaintiff a promissory note in the principal amount of $300,000 ("Hansen Note").  (*Id.* ¶ 19.)  For purposes of securing that promissory note, Matthew, through SRI, executed an agreement ("Hansen Agreement") and a security agreement ("Hansen Security Agreement"), securing as collateral, *inter alia*, the Premises and its fixtures, rents, and contracts pertaining to the Premises. (*Id.* ¶¶ 20-21.)  The Hansen Note, Hansen Agreement, and Hansen Security Agreement (collectively, the "Hansen Loan Documents"), memorialized the Hansen Loan.  (*Id.* ¶ 21.) Under the terms of the Hansen Loan Documents, SRI was required to acquire the Premises and

construct a one family residential dwelling to be listed for sale at $2,850,000.00 upon completion. (*Id.* ¶¶ 22-23.) The Hansen Agreement provided for repayment of the Hansen Loan upon the sale of the completed Premises, as well as 25% of the net profit of sale. (*Id.* ¶ 25.) Any sale or transfer of the Premises would require Plaintiff's consent. (*Id.* ¶ 27.)

The Hansen Agreement permitted SRI to mortgage or otherwise encumber the Premises, in particular by taking a larger loan with Patriot National Bank to supplement the Hansen Loan. (*Id.* ¶ 26.) Matthew "advised Plaintiff not to record her security agreement because it would jeopardize the additional financing with Patriot National Bank." (*Id.* ¶ 28.) Accordingly, Plaintiff did not record her interest in the property. On September 29, 2008, SRI acquired title to the Premises with the proceeds of the Hansen Loan. (*Id.* ¶ 29.)

II.    *HVB Loan*

Although the Hansen Agreement contemplated that SRI would obtain a loan from Patriot National Bank, Matthew, through SRI, instead obtained additional financing from Hudson Valley Bank ("HVB"). (*Id.* ¶¶ 30, 34.) On September 29, 2008, SRI executed and delivered to HVB an acquisition loan note, evidencing a loan made to SRI for $400,500 ("HVB Acquisition Note"), and a construction loan note, evidencing a loan made to SRI for $1,226,000 ("HVB Construction Note", together, the "HVB Notes"). (*Id.* ¶ 30.) The maturity date for both HVB Notes was April 10, 2010. (*Id.* ¶ 31.) For the purpose of securing payment of the HVB Notes, Matthew, through SRI, executed an acquisition loan mortgage and security agreement ("HVB Acquisition Mortgage") and a construction loan mortgage and security agreement ("HVB Construction Mortgage", together, the "HVB Mortgages"), both secured by the Premises. (*Id.* ¶ 32.) The HVB Notes and Mortgages (together, the "HVB Loan Documents") memorialized the "HVB Loan."

On March 12, 2010, following the completion of the dwelling on the Premises and the 2008 financial crisis, HVB agreed to extend the maturity of the HVB Loan to October 1, 2010. (*Id.* ¶¶ 35-37.)  On July 20, 2010, Matthew sent Plaintiff an email stating "'when the construction loan matures on 10/1/10, if the home isn't sold, I plan on paying off the construction loan with a collateral loan from my personal funds.  This will take a lot of pressure off of me, until the home is finally sold.'"  (*Id.* ¶ 38.)  Matthew ultimately satisfied the HVB Loan with his personal funds in September 2010.  (*Id.* ¶ 39.)

III.    *Miller Loan*

On or about September 28, 2010, Mathew, through SRI, executed and delivered to his wife, Rachel, a new acquisition loan mortgage note for $400,500 ("Miller Acquisition Note") and a new construction loan mortgage note for $1,234,222.86 ("Miller Construction Note", together, the "Miller Notes").  (*Id.* ¶ 40.)  For the purpose of securing the Miller Notes, Matthew, through SRI, duly executed, acknowledged, and delivered an "acquisition/construction mortgage and security agreement" in the amount of $1,634,722.86 (the "Miller Mortgage").  (*Id.* ¶ 41.) The Miller Notes, together with the Miller Mortgage (the "Miller Loan Documents") memorialized a loan (the "Miller Loan"), which was a lien on the Premises.  (*Id.* ¶ 42.)  Two and a half years later, on April 22, 2013, the Miller Mortgage was recorded.  (*Id.* ¶ 44.)  Plaintiff contends that the Miller Loan was not supported by any consideration, Rachel never demanded any payments under the Miller Mortgage, and that the loan was a fraud.  (*Id.* ¶¶ 43-46.)

IV.    *Foreclosure Action*

Around May of 2013, Matthew informed Plaintiff that he had received an offer to purchase the Premises for $2,050,000.00, but that the proceeds of the sale would be insufficient to pay for the Hansen Loan and that any proceeds would go towards the Miller Mortgage.  (*Id.* ¶¶

47-48.)  Plaintiff did not provide her consent to the sale, which Matthew was required to obtain pursuant to the terms of the Hansen Loan.  (*Id.* ¶¶ 27, 47, 49.)  Matthew's lawyer sent Plaintiff a letter threatening a foreclosure action to cut off her interest in the Premises if she did not consent to the sale.  (*Id.* ¶ 50.)

Plaintiff did not consent and Rachel proceeded with a foreclosure action.  On or around June 4, 2013, Rachel sent a letter to SRI stating that it was in default under the terms of the Miller Loan and allowing it 30 days to cure the default.  (*Id.* ¶ 51.)  On August 9, 2013, Rachel, represented by Defendants Lieberman and M&L, commenced a foreclosure action by filing a summons and verified complaint against Plaintiff and SRI seeking to foreclose the Miller Loan ("Foreclosure Action").  (*Id.* ¶¶ 52-55.)  On November 13, 2013, Plaintiff filed a verified answer with affirmative defenses, counterclaims, and cross-claims against SRI, asserting that the Miller Mortgage was fraudulent and that Plaintiff's interest was superior to Rachel's.[2]  (*Id.* ¶ 57.)  On January 10, 2014, SRI, represented by Defendants Balanoff and Balanoff P.C., filed a verified answer with cross-claims against Plaintiff.  (*Id.* ¶¶ 58-60.)  During the Foreclosure Action, both Matthew and Rachel testified at their depositions that the funds used to satisfy the HVB Loan were Rachel's personal funds.  (*Id.* ¶¶ 61-62.)  Plaintiff contends that the funds used were actually entirely earned by Matthew and belonged to him.  (*Id.* ¶ 63.)

On May 16, 2016, Rachel moved for summary judgment against Plaintiff and SRI, seeking judgment to foreclose the Miller Loan and dismissing Plaintiff's counter-claims.  On May 25, 2016, Plaintiff moved for a declaratory judgment that her loan, the Hansen Loan, was

---

[2] In particular, Plaintiff asserted affirmative defenses of equitable estoppel, failure to mitigate damages, Rachel's culpable conduct, unclean hands, Rachel's failure to properly pay off the pre-existing HVB Loans, and laches. Plaintiff interposed counter-claims against Rachel for fraud, tortious interference with contract, and a declaratory judgment that the Hansen Loan has priority over the Miller Mortgage and that Plaintiff be paid first with any proceeds of the foreclosure sale.  Plaintiff also interposed cross-claims against SRI for fraud, breach of contract, a declaratory judgment that the Hansen Loan has priority over the Miller Mortgage and that Plaintiff be paid first with any proceeds of the foreclosure sale, and attorney's fees.

superior to the Miller Loan. (*Id.* ¶ 65.) Rachel and Plaintiff opposed each other's motions, and SRI opposed only Plaintiff's motion, conceding to the foreclosure by Rachel. (*Id.* ¶¶ 66-67.) Plaintiff contends that Balanoff and Balanoff, P.C. "purposefully failed to oppose the summary judgment motion in order that summary judgment extinguishing SRI's right of redemption be granted," and that Balanoff, Balanoff, P.C., Lieberman, and M&L, P.C. "colluded at the summary judgment phase of the case by causing summary judgment to be issued against SRI so that they could later argue that summary judgment against SRI become 'law of the case' or 'res judicata' on the issue of the validity of the Miller mortgage." (*Id.* ¶¶ 68-69.) On September 27, 2016, Justice McCormack issued an order denying Rachel's motion for summary judgment against Plaintiff, denying Plaintiff's motion for a declaratory judgment that the Hansen Loan is superior to the Miller Loan, and granting Rachel's unopposed motion for summary judgment against SRI. (*Id.* ¶ 70.)

The parties therefore proceeded to trial before the late Justice George R. Peck in the spring of 2017. (*Id.* ¶ 71.) During the course of the trial, Balanoff and Lieberman "colluded amongst themselves and their husband and wife clients when they made representations to the court as to the enforceability and validity of the Miller Mortgage" and "misrepresented to the court that the Hansen Loan was not a secured loan, but was a speculative unsecured interest." (*Id.* ¶¶ 73-79.) Plaintiff contends that such advocacy "misled and deceived the court" because Matthew "admitted that the funds used to satisfy the HVB Mortgage (and to create the Miller Mortgage) were his own personal funds, resulting in [Matthew] being both mortgagor and mortgagee under the Miller Loan." (*Id.* ¶¶ 73-75.) Plaintiff alleges that Balanoff and Lieberman further "misled and deceived the court by stating [that] [Justice] McCormack had already determined the validity of the Miller Mortgage in the summary judgment phase when he granted

summary judgment against SRI." (*Id.* ¶ 76.)  Additionally, Balanoff "did not defend the foreclosure or the interests of SRI at any time during the trial," instead focusing his efforts on challenging Plaintiff's interest in the Premises and her rights under the Hansen Loan Documents. (*Id.* ¶¶ 80-81.)[3]

Justice Peck issued a decision following the trial, finding that Justice McCormack had already determined the Miller Mortgage to be valid, that the Hansen Loan was a subordinate investment, and that Rachel was entitled to a judgment of foreclosure.  (*Id.* ¶ 84.)  Accordingly, Justice Peck issued a Judgment of Foreclosure and Sale in the amount of $3,903,606.19, plus legal fees in the amount of $107,532.82 for a total of $4,011,138.90.  (*Id.* ¶¶ 85-89.)

On February 26, 2019, Rachel purchased the premises at a public auction for $1.00.  (*Id.* ¶ 91.)  Plaintiff has appealed Justice Peck's decision and is awaiting a date for oral argument. (*Id.* ¶ 85.)

## DISCUSSION

I.    *Legal Standards*

A.  *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)*

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006) (quoting *Reserve Solutions Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 286 (S.D.N.Y. 2006)), *aff'd*, 273 F.

---

[3] Plaintiff also alleges that Balanoff "appeared to have a familiar relationship with [Justice] Peck due to [Justice] Peck calling Balanoff by his nickname during court proceedings." (*Id.* ¶ 72.)

App'x 61 (2d Cir. 2008); *accord Tomaino v. United States*, 2010 WL 1005896, at *1 (E.D.N.Y. Mar. 16, 2010).  "In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions." *Cunningham v. Bank of New York Mellon, N.A.*, 2015 WL 4101839, * 1 (E.D.N.Y. July 8, 2015) (citing *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

### B.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3)

When a defendant challenges the venue of the court, the plaintiff has the burden to establish that venue is proper.  *See Cold Spring Harbor Lab. v. Ropes & Gray LLP,* 762 F. Supp. 2d 543, 551 (E.D.N.Y. 2011).  Courts may consider materials outside the pleadings when deciding a motion for improper venue.  *See e.g., Martinez v. Bloomberg LP,* 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012).  "If the court chooses to rely on pleadings and affidavits" as opposed to conducting an evidentiary hearing, "the plaintiff need only make a *prima facie* showing of venue." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (internal quotation marks, citation, and brackets omitted). In analyzing whether a plaintiff has made the requisite showing, courts "view all the facts in a light most favorable to plaintiff." *Phillips v. Audio Active Ltd.,* 494 F.3d 378, 384 (2d Cir. 2007).

### C.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action, a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  The plausibility standard is guided by two principles.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig*., 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

## II.    *The Parties' Arguments*

As noted above, there are currently three motions to dismiss before the Court. The Court addresses the arguments raised in the individual motions below.

### A. *Rachel, Matthew, and SRI's Motion to Dismiss*

The Miller Defendants jointly submitted a motion to dismiss (the "Miller MTD").  The Miller Defendants argue that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue due to a mandatory forum selection clause in the Hansen Agreement designating the state court of Nassau County, New York as the only appropriate venue for this suit.  In the alternative, Defendants argue that the Complaint should be dismissed pursuant to Fed. R. Civ. P 12(b)(1) and 12(b)(6) as most of the claims are barred by the *Rooker-Feldman* doctrine, *res judicata*, and collateral estoppel, and the rest are otherwise barred for reasons such as that they fail to state a claim, are duplicative, or premature.  (Miller Defs.' Mem. in Supp. [ECF No. 42-1].)

### B. *Balanoff and Balanoff, P.C.'s Motion to Dismiss*

The Balanoff Defendants jointly submitted a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) (the "Balanoff MTD").  The Balanoff Defendants, echoing some of the arguments made by the Miller Defendants, argue for dismissal on the basis of the *Rooker-Feldman* doctrine, *res judicata*, collateral estoppel, and failure to state a claim upon which relief can be granted.  The Balanoff Defendants argue that Plaintiff is attacking the state court judgment, and that the issues presented in this action were decided in the state court proceeding.  (Balanoff Defs.' Mem. in Supp. [ECF No. 52-26].)

### C. *Lieberman and Markotsis & Lieberman's Motion to Dismiss*

The Lieberman Defendants also jointly submitted a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) (the "Lieberman MTD").  They raise similar grounds for dismissal as the other Defendants, including the *Rooker-Feldman* doctrine, collateral estoppel, and failure to state

a claim upon which relief can be granted, as well as some new arguments, such as *Colorado River* abstention.  (Lieberman Defs.' Mem. in Supp. [ECF No. 46-6].)

III.    *Forum Selection Clause*

    A.  *Proper Enforcement Mechanism*

       The Miller Defendants argue that the claims against them should be dismissed "on *forum non conveniens* grounds, pursuant to FRCP 12(b)(3), because the Hansen Agreement between SRI and Hansen contains a mandatory forum selection clause that designates the state courts of Nassau County, New York as the only appropriate venue for this lawsuit."  (Miller Defs.' Mem. in Supp. at 2.)  Defendants point to the following language in Paragraph 17 of the Hansen Agreement: "Each Party to this Agreement hereby agrees and consents that any legal action or proceeding with respect to this Agreement shall only be brought in the courts of New York State sitting in Nassau County."  (*Id.* (internal citation omitted).)

       Plaintiff argues in response that the Miller Defendants' "motion based on venue is flawed as it erroneously conflates the concept of *forum non conveniens* and improper venue."  (Pl.'s Mem. in Opp. to Miller MTD [ECF No. 44-11] at 9.)  In particular, Plaintiff argues that venue is not improper and that the Miller Defendants' argument is actually one for *forum non conveniens*.  (*Id.* at 9-10 (citing *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013).)  Nonetheless, Plaintiff contends that the Miller Defendants did not properly argue *forum non conveniens* and should not be permitted to do so on reply.  (*Id.* at 10-11.)  Furthermore, Plaintiff argues that the forum selection clause does not limit disputes to state court and that the clause does not satisfy the test laid out in *Phillips v. Audio Active, Limited*.  (*Id.* at 11-12.)

Plaintiff is correct that the proper enforcement mechanism for a forum selection clause is *forum non conveniens* rather than Fed. R. Civ. P. 12(b)(3).  *Jones v. Ponant USA LLC*, 2020 WL 2489076, at * 3 (S.D.N.Y. May 14, 2020).  "A forum-selection clause cannot render venue 'improper' under Rule 12(b)(3)…because '[w]hether venue is…'improper' depends exclusively on whether the court…satisfies the requirement of federal venue laws, and those provisions say nothing about a forum-selection clause.'"  *Id.* (quoting *Atl. Marine*, 571 U.S. at 55).  Courts faced with a defendant raising a forum selection clause on a Rule 12(b)(3) motion have treated the motion as one for dismissal under *forum non conveniens*.  *See id.*, *Fubon Ins. Co. Ltd. v. OHL Int'l*, 2014 WL 1383604, at *5 (S.D.N.Y. Mar. 31, 2014).  Accordingly, the Court will consider the Miller Defendants' motion as a motion for *forum non conveniens*.

### B.  Enforceability of Forum Selection Clause

"Under the doctrine of *forum non conveniens*, a valid forum-selection clause requiring suit in a state or foreign forum must be given 'controlling weight in all but the most exceptional cases.'"  *Midamines SPRL Ltd. v. KBC Bank NV*, 2014 WL 1116875, at *3 (S.D.N.Y. Mar. 18, 2014), *aff'd*, 601 F. App'x 43 (2d Cir. 2015) (quoting *Atl. Marine*, 571 U.S. 59-60).  A forum-selection clause is enforceable if the clause is valid and if public interest factors, such as the desire to avoid court congestion or the preference for adjudicating local controversies locally, do not counsel against enforcement.  *Id.*

"[F]orum selection clauses are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances," *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011) (internal citation and quotations omitted.)  Courts undertake a four-part analysis to determine if a forum selection clause is enforceable.  First, the Court must determine whether: (1) the clause was reasonably

communicated to the party challenging enforcement; (2) the clause is mandatory, rather than permissive, in nature; and (3) the clause encompasses the plaintiff's claims. *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 383-384 (2d Cir. 2007). If these three conditions are satisfied, the clause is "presumptively enforceable." *Id.* "The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* (internal citations and quotations omitted); *Jones*, 2020 WL 2489076, at * 7 (presumption can be rebutted only by demonstrating that: "(1) [the Forum-Selection Clause's] incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of [her] day in court.")

With respect to the clause itself, the phrase "courts of New York State" clearly indicates New York State courts and not a federal court sitting in New York. *See Wiest Int'l, GMBH v. Zobel*, 2018 WL 736010, at **2-3 (Feb. 6, 2018) (collecting cases in support of proposition that "courts of the State of New York" unambiguously sets venue in New York State courts); *see also Rogen v. Memry Corp.*, 886 F. Supp. 393, 396 (S.D.N.Y. 1995) ("The clause designates '[t]he legal tribunals *of the State* of New York,' not the courts 'in' New York….The use of the word 'of' and the phrase 'State of' is sufficiently specific and unambiguous."). Plaintiff does not appear to challenge the second prong of the test. With respect to the third prong, Plaintiff argues that with the exception of counts 7 and 8, which seek specific performance of the Hansen Agreement, the other claims against the Miller Defendants do not arise out of the Hansen Agreement. (Pl.'s Mem. in Opp. to Miller MTD at 12.) As such, Plaintiff implicitly concedes

that her seventh and eighth causes of action seeking specific performance of the Hansen

Agreement are covered by the forum selection clause.  (*Id.*)

### i.  *Parties Subject to the Forum Selection Clause*

"[A] forum selection clause in a contract encompasses claims made against a non-

signatory where (1) those claims are 'nearly identical to' the claims against the signatory, (2)

'arise out of' the same transaction as those claims, and (3) the non-signatory consents to the

foreign jurisdiction."  *Horvath v. Banco Comercial Portugues, S.A.*, 461 F. App'x 61, 63 (2d Cir.

2012).   "[A] non-signatory to a contract containing a forum selection clause may enforce the

forum selection clause against a signatory when the non-signatory is 'closely related' to another

signatory.  In such instances, the relationship between the non-signatory and that (latter)

signatory must be sufficiently close that the non-signatory's enforcement of the forum selection

clause is 'foreseeable' to the signatory against whom the non-signatory wishes to enforce the

forum selection clause."  *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d

Cir. 2013).

The crux of Plaintiff's complaint is that the interests of Rachel, Matthew, and SRI are

aligned.  Indeed, she repeatedly refers to Matthew as the alter ego of SRI and says Rachel is

SRI's "de facto nominee."  (Compl. ¶¶ 53, 104, 126 129, 151, 152, 158, 159.)  More explicitly,

Plaintiff alleges that Rachel, Matthew, and SRI are "united in their interests."  (Compl. ¶ 20.)

Nonetheless, the Court agrees with Plaintiff that, even though Rachel's interests ultimately

became united with Matthew and SRI's, Rachel was not a foreseeable beneficiary of the Hansen

Agreement.  (Pl.'s Mem. in Opp. to Miller MTD at 15.)  Similarly, the Balanoff and Lieberman

Defendants are not closely related in the sense described above such that they should benefit

from the forum selection clause.  Accordingly, the forum selection clause only applies to SRI and Matthew.

        *i.*   *Claims Subject to the Forum Selection Clause*

As noted above, Plaintiff appears to concede that her seventh and eighth causes of action, seeking specific performance of the Hansen Agreement, would be subject to the forum selection clause.  Thus, the question remains whether the forum selection clause applies to her other claims.

As to the first two claims for fraud in the enforcement of the Miller Mortgage and fraud upon the court, despite Plaintiff's contention that these claims do not arise out of the Hansen Agreement, Plaintiff describes these claims in her complaint as being premised on a scheme "to avoid paying Plaintiff in accordance with the *Hansen Agreement*."  (Compl. ¶¶ 99, 114 (emphasis added.))  Given the broad language of the forum selection clause encompassing "any legal action or proceeding with respect to this Agreement," the fraud claims premised on avoidance of the obligations of the Hansen Agreement fall within the ambit of the forum selection clause.[4]  *See Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1361 (2d Cir. 1993) (finding that a forum selection clause that applied to all claims "relating to" the contract was not restricted to mere breach of contract claims and incorporated the federal securities laws); *Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns., Ltd.*, 2009 WL 4907060, at *3 (S.D.N.Y. Dec. 21, 2009) (finding that forum-selection clause included fraud claims because they "appear[ed] to be inextricably intertwined with ... [defendant's] performance under [the contract].").

---

[4] The cases Plaintiff cites for the proposition that fraud claims should not be included deal with forum selection clauses that are narrower than the one at issue here.  *Cf. Bon Jour Group v. Elan-Polo, Inc.* 1997 U.S. Dist. LEXIS 10283, at *6 (S.D.N.Y. July 16, 1997) ("[T]he clause in the Agreement does not employ such broad language as 'any litigation'; rather, it limits its coverage to claims for breach of contract and interpretation of terms.").

Plaintiff argues that the remaining claims against the Miller Defendants (fourth for declaratory judgment reattaching Hansen's lien, fifth for a constructive trust, sixth for unjust enrichment, and thirteenth for legal fees and costs) are "either tort or quasi-contract related to which the forum-selection clause has no relevance." (Pl.'s Mem. in Opp. to Miller MTD at 12.) However, as noted above, the forum selection clause is broadly worded to include "any legal action or proceeding with respect to this Agreement." Plaintiff also argues that her "underlying rights to recover money from the Miller Defendants and her ability to show damages derives from other documents," specifically the Hansen Note and Hansen Security Agreement. (Pl.'s Mem. in Opp. to Miller MTD at 14.) She goes on to contend that the forum selection clause in the Hansen Agreement does not apply to the claims arising out of the other Hansen Loan Documents, specifically the Hansen Security Agreement and the Hansen Note, which do not contain their own forum selection clauses. (*Id.* at 13-16.)

Defendants argue that the Hansen Loan Documents should be read together and the forum selection clause from the Hansen Agreement imputed to the other two documents; Plaintiff argues that the omission of the forum selection clause from the other two documents should be assumed to have been intentional. A review of the Hansen Loan Agreement, however, demonstrates that the documents should be read as one. *See Crede CG III, Ltd. v. 22nd Century Grp., Inc.*, 2017 WL 280818, at * 7 (S.D.N.Y. Jan. 20, 2017) ("Under New York law, the determination of whether multiple writings should be construed as one agreement depends on the intent of the parties,…which is typically a question of fact for the jury. But where the documents in question reflect no ambiguity as to whether they should be read as a single contract, the question is a matter of law for the court.") (internal citations and quotation marks omitted).

The Hansen Agreement explicitly incorporates both the Hansen Note and Security Agreement: "The Loan shall be evidenced by a Promissory Note in substantially the form annexed hereto…and made a part hereof;" "The parties hereby agree to execute a Security Agreement simultaneously with this Agreement in substantially the form annexed hereto…and made a part hereof."  (Compl. Ex. B (Hansen Agreement) [ECF No. 1-4] ¶¶ 1; 10.)  Further, the Hansen Agreement states: "This agreement and its Exhibits shall constitute the entire agreement between Borrower and Lender…."  (*Id.* ¶ 15.)  Thus, the Hansen Loan Documents, which were signed on the same date and which Plaintiff describes as collectively memorializing the Hansen Loan, should be read together.  Accordingly, the forum selection clause of the Hansen Agreement applies to the Hansen Note and Hansen Security Agreement, including the remaining claims that stem from those documents.

Given the above, the Court finds that the forum selection clause is presumptively enforceable against Defendants Matthew and SRI as to all claims asserted against them.

*C.  Public Interest Factors*

As noted above, a valid forum selection clause will be enforced unless public interest considerations outweigh its enforcement.  *Atl. Marine Const. Co.*, 571 U.S. at 64 (instructing that courts "should not consider arguments about the parties' private interests").  Because no public interest concerns have been raised, and the Court can think of none, the forum selection clause is enforceable.

Accordingly, the claims against Matthew and SRI are dismissed on the basis of *forum non conveniens*.

IV.      The Rooker-Feldman *Doctrine*

All Defendants move to dismiss for lack of subject matter jurisdiction on the basis of the *Rooker-Feldman* doctrine.  The Supreme Court decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), taken together, "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."  *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005).  The doctrine precludes a federal court from entertaining "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Four elements must be met for the *Rooker-Feldman* doctrine to divest a federal court of subject matter jurisdiction:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must 'complain[ ] of injuries caused by [a] state-court judgment[.]' Third, the plaintiff must 'invit[e] district court review and rejection of [that] judgment[ ].' Fourth, the state-court judgment must have been 'rendered before the district court proceedings commenced'—*i.e.*, *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Hoblock*, 422 F.3d at 85.  The first and fourth requirements have been classified as "procedural" whereas the second and third requirements are "substantive."  *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 346 (E.D.N.Y. 2010).  If all four requirements are met, federal subject matter jurisdiction is barred by *Rooker–Feldman*.

The parties agree that the procedural requirements of *Rooker-Feldman* are met—Plaintiff lost in state court and the state court judgment was rendered before Plaintiff brought the instant action.  Thus, the only issue to be decided here is whether the substantive requirements are met.

The substantive requirements "can be reduced to the following statement: 'federal plaintiffs are not subject to the *Rooker–Feldman* bar unless they complain of an injury caused by a state judgment." *McKithen v. Brown*, 481 F.3d 89, 97 (2d Cir. 2007) (quoting *Hoblock*, 422 F.3d at 85). The *Hoblock* court explained "[t]he following formula guides our inquiry: a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Hoblock*, 422 F.3d at 88. Plaintiff, relying on this language from *Hoblock*, argues that her complaint falls into the latter category of conduct that was ratified, acquiesced in, or left unpunished by the state court judgment. (Pl.'s Mem. in Opp. to Miller MTD at 19.)

Plaintiff correctly notes that the *Rooker-Feldman* doctrine is claim specific. Accordingly, the Court analyzes the various claims below.

A. Counts 1 and 2 (Fraud Claims against all Defendants)

Plaintiff's first two claims, viz. for fraud in the enforcement of the Miller Mortgage and fraud upon the court, are asserted against all defendants. The basis for these claims is "prosecuting and defending the foreclosure of a mortgage that was known not to have been supported by consideration" and "the fact that Rachel did not intend to collect payments either monthly or at maturity, yet the foreclosure action alleges a default in payment."[5] (Pl.'s Mem. in Opp. to Miller MTD at 21; Pl.'s Mem. in Opp. to Lieberman MTD [ECF No. 47] at 13-14; Pl.'s

---

[5] The Court notes, parenthetically, that the state court appears to have been able to discern the realities of the situation Plaintiff describes. *See, e.g.*, Compl. Ex. O (Justice McCormack Decision) [ECF No. 1-17] at 3 n.4 (("In an attempt to argue that it was Rachel alone who paid off the HVB loans, Matthew and Rachel strain all credulity and contort themselves and the truth….it is undisputed that the funds used to pay off the HVB loans were marital funds, and Matthew and Rachel repeatedly saying 'it was Rachel's money' does nothing to change that unassailable, legal fact."); at 7 ("In fact, it appears clear to this court that Matthew orchestrated the entire scenario with Rachel as a willing follower."); at 12 ("Most pointedly, the fact that Hansen never recorded her loans, or attempted to confirm whether or not they had been recorded, particularly after being made aware of the purported assignment may very well be fatal to her claim."))

Mem. in Opp. to Balanoff MTD [ECF No. 54-9] at 13-14.)  Plaintiff argues that "[t]he

foreclosure judgment was caused by the [] Defendants' conduct – not the reverse – the state court

judgment did not cause their conduct."  (Pl.'s Mem. in Opp. to Miller MTD at 21; Pl.'s Mem. in

Opp. to M & L MTD at 14; Pl.'s Mem. in Opp. to Balanoff MTD at 14.)

     All three sets of defendants argue that the complaint is essentially an attack on the

judgment issued in the Foreclosure Action, alleging injuries cause by the lien and foreclosure

judgment, and requiring this Court to sit in judgment of the state court proceedings.  (Miller

Defs.' Mem in Supp. at 12-15; Lieberman Defs.' Mem. in Supp. at 9-10; Balanoff Defs.' Mem.

in Supp. at 10-11.)  The Miller Defendants argue that Plaintiff's "alleged injuries were caused by

the lien and foreclosure judgments."  (Miller Defs.' Mem in Rep. at 6-8.)  Furthermore, the

Miller and Lieberman Defendants argue that the appropriate remedy for Plaintiff's fraud claims

is to vacate the civil judgment pursuant to C.P.L.R. § 5015 or appeal the judgment in state court,

which avenue she is currently pursuing.  (Miller Defs.' Mem. in Opp. at 12; Lieberman Defs.'

Mem. in Supp. at 10.)

     Though Plaintiff claims the injury she complains of is based on Defendants' actions

rather than the state court judgment, at bottom she is asking this Court to sit in judgment of the

state court decision.  As with many other foreclosure cases in this circuit that follow an

unfavorable outcome in state court, "[a]lthough Plaintiff[] style[s] her claim as one of fraud, the

harm [she] consistently identif[ies] is the judgment permitting foreclosure to take place."

*Webster v. Wells Fargo Bank, N.A.*, 2009 WL 5178654, at *6 (S.D.N.Y. Dec. 23, 2009) (finding

*Rooker-Feldman* barred claims that defendant fraudulently induced plaintiff into entering

mortgage, failed to record a satisfaction of the mortgage, and unlawfully recorded extra

mortgages on the property), *aff'd sub nom. Webster v. Penzetta*, 458 F. App'x 23 (2d Cir. 2012),

*as amended* (Jan. 24, 2012); *see also Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 165 (E.D.N.Y. 2010) ("Although plaintiff has labeled the relief in the complaint as seeking monetary damages, it is abundantly clear that the whole purpose of this action is to stop and undo the foreclosure judgment."), *aff'd*, 446 F. App'x 360 (2d Cir. 2011).  Furthermore, "[c]ourts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine."  *Webster*, 2009 WL 5178654, at *5 (collecting cases).

Plaintiff argues that "[i]t is settled that in cases where the federal plaintiff interposes claims alleging that a state court judgment was procured by fraud and seeks money damages due to the fraud, the doctrine does not apply because the district court need not review and reject the state court judgment in assessing damages for the fraud."  (Pl.'s Mem. in Opp. to Miller MTD at 19-20.)  Plaintiff cites to *Worthy-Pugh v. Deutsche Bank National Trust Company* in support of her position.  664 F. App'x 20 (2d Cir. 2016).  In that case, plaintiff brought an action against Deutsche Bank in federal court based on an allegedly fraudulent foreclosure action in state court. The Second Circuit found that the plaintiff's "argument that the [state court] judgment was void because it was obtained through a fraudulent scheme to interfere with the judicial process does not defeat application of *Rooker-Feldman*."  *Id.* at 21.  However, the court held that Plaintiff's claim for "*damages* stemming from an allegedly fraudulent foreclosure judgment" was not barred by *Rooker-Feldman* "because the district court can determine damages liability without reviewing the propriety of the state court judgment."  *Id.* (emphasis added).  Ultimately, the Court found the claim was barred by *res judicata* because it could have been litigated as a counterclaim in the state court proceeding.  *Id.* at 22.

The Second Circuit appears to have refined its approach to this issue and now instructs that where the "damage" a plaintiff complains of is essentially the outcome of the state court

proceeding, the claim is barred by *Rooker-Feldman*.  In a recent decision, *Fiorilla v. Citigroup Global Markets, Inc.*, the Second Circuit rejected the plaintiff's argument that the district court erred in finding that his damages claim based on the defendants' alleged fraud in the underlying action was barred by *Rooker-Feldman*.  771 F. App'x 114, 115 (2d Cir. 2019).  The Court explained:

> Fiorilla argues that this claim is independent of any state court judgment because it is a suit against the defendants for their conduct before the court (not a request to set aside a state judgment) and, therefore, does not involve the type of "review and rejection" of state court judgments that *Rooker-Feldman* precludes. *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)). This argument is unavailing. Fiorilla's fraud claim is "based upon the fraud perpetrated upon the state court," Appellant Br. 37, and the only "damage" Fiorilla identifies from defendants' alleged fraud comes from the unfavorable state court judgment. Accordingly, his fraud claim "invite[s] ... review and rejection of that judgment," which is precisely what Rooker-Feldman bars. *Vossbrinck*, 773 F.3d at 426 (quoting *Hoblock v. Albany Cnty. Bd. of Elecs.*, 422 F.3d 77, 85 (2d Cir. 2005)).

771 F. App'x 114, 115.  Similarly, the damage that Plaintiff complains of here is essentially the outcome of the Foreclosure Action, which cannot be assessed without reviewing the judgment in that case.  Accordingly, these claims are barred by *Rooker-Feldman*.

> B. Count 4 (Declaratory Judgment Reattaching Plaintiff's Lien on the Premises against Miller Defendants)

The Miller Defendants invoke *Rooker-Feldman* as a bar to Plaintiff's fourth claim for a declaratory judgment reattaching Plaintiff's lien on the premises pursuant to *Dorff v. Bornstein*, 277 N.Y. 236 (1938)[6] because Rachel acquired title to the Premises as a successful bidder at an

---

[6] Plaintiff points to the following language from *Dorff*: "In cases where either an unconditional warranty of title or a covenant to protect the title of the second mortgagee against all incumbrances and liens, or a covenant to defend the title against the claims of others or to pay all taxes was contained in the second mortgage indenture or in the conveyance in which such incumbrances or liens were assumed, it has been held that, even without the intervention of fraud, the second mortgage would reattach as a lien on the property upon the previous owner who was also the

auction.  (Compl. ¶ 127.)  The Miller Defendants argue that because the foreclosure judgment contemplated that Rachel might purchase the Premises at the auction, asking for such a declaratory judgment is asking this Court to reject the foreclosure judgment.  (Miller Defs.' Mem. in Supp. at 18.)  Plaintiff counters that while this cause of action "may complain of injuries caused by the judgment…it does not seek review and rejection of that judgment.  To the contrary, it seeks a declaration that *accepts* the judgment and defines the status of Plaintiff's security interest that results from that very judgment."  (Pl.'s Mem. in Opp. to Miller MTD at 21-22.)  In addition to the dubious application of *Dorff* to the facts of this case, it is unclear how this Court could issue the requested declaratory judgment without sitting in judgment of the state court foreclosure judgment.  Even the process of adopting the judgment, as Plaintiff asks that this Court do, requires passing judgment on the state court judgment.  Accordingly, this claim is dismissed.

C.  Counts 5 and 6 (Constructive Trust/Unjust Enrichment against Miller Defendants) and 7 and 8 (Specific Performance of the Hansen Agreement against Miller Defendants)

Plaintiff's fifth and sixth causes of action ask this Court to impose a constructive trust for her benefit because the Miller Defendants "will be unjustly enriched if they sell the Premises without accounting for the Hansen Loan and anticipated profits."  (Compl. ¶¶ 128-148.)  Similarly, Plaintiff's seventh and eighth causes of action ask for a declaratory judgment compelling the sale of the Premises as contemplated in the Hansen Agreement and an accounting of the net profit due Plaintiff under the Hansen Agreement.  (Compl. ¶¶ 149-162.)  Plaintiff argues that these claims are not barred by *Rooker-Feldman* because "the crux of these claims is

---

maker of the second mortgage, or his nominee, reacquiring the title upon the foreclosure sale, upon the theory that the maker of such a mortgage is estopped to dispute the lien of the second mortgage."  (Pl.'s Mem. in Opp. to Miller MTD at 22 n.13.)

SRI and Matthew's failure to re-pay Plaintiff her $300,000 loan, an injury that preceded the state

court judgment." (Pl.'s Mem. in Opp. to Miller MTD at 22.)

Plaintiff's entire action in federal court, including these counts, is predicated on the idea

that Defendants allegedly engaged in fraudulent behavior in the state court action. As a result of

that allegedly fraudulent behavior, Plaintiff seeks a constructive trust, damages for unjust

enrichment, and specific performance of the Hansen Agreement. These claims, unlike the fraud

claims discussed above, are not merely claims for money damages but rather ask this Court to

take affirmative action in contravention of what was decided in the Foreclosure Action. In a

similar case, *Vossbrink v. Accredited Home Lenders, Inc.*, a plaintiff brought an action alleging

that the defendants engaged in fraud in a foreclosure action by misrepresenting that they had

standing to seek foreclosure and submitting fraudulent title documents in the state foreclosure

action. 773 F.3d 423, 427 (2d Cir. 2016). The Second Circuit affirmed the district court's

decision finding that the fraud claims asking the court to grant plaintiff title to the property at

issue in the foreclosure action were barred by the *Rooker-Feldman* doctrine:

> To the extent Vossbrinck asks the federal court to grant him title to his property
> because the foreclosure judgment was obtained fraudulently, *Rooker–Feldman*
> bars Vossbrinck's claim. Vossbrinck "invite[s] ... review and rejection" of the
> state judgment. *Id.* (internal alterations and quotation marks omitted). He is asking
> the federal court to determine whether the state judgment was wrongfully issued
> in favor of parties who, contrary to their representations to the court, lacked
> standing to foreclose. This would require the federal court to review the state
> proceedings and determine that the foreclosure judgment was issued in error. And
> the injury of which Vossbrinck "complains" in this claim for relief, and which he
> seeks to have remedied, is the state foreclosure judgment. This is evident from the
> relief Vossbrinck requests—title to and tender of his property and, in his brief on
> appeal, to have the state judgment declared "void." *Cf. Exxon Mobil,* 544 U.S. at
> 293, 125 S. Ct. 1517 (*Rooker–Feldman's* "paradigm situation" is where the
> plaintiff has "repaired to federal court to undo the [state] judgment").

773 F.3d at 427. As with *Vossbrink*, Plaintiff, in bringing this set of claims, is effectively

asking the Court to determine that the state judgment was wrongfully issued. While the injury

Plaintiff complains of may have initially arisen prior to the state court judgment, the state court ruled on the issue central to these claims when it determined that Plaintiff's interest was subordinate to Rachel's, and that Plaintiff was therefore not owed any money under the Foreclosure Action.  Thus, finding that Plaintiff is owed any monies would necessarily involve this Court sitting in judgment of the state court decision.  Accordingly, these claims are barred by *Rooker-Feldman*.

> D. Counts 9 and 10 (Collusion and Deceit Upon the Court against Balanoff and Lieberman Defendants Pursuant to New York State Judiciary Law §487) and 11 and 12 (Negligence against Balanoff and Lieberman Defendants)

Plaintiff seeks to recover damages from the Balanoff and Lieberman Defendants for their roles in representing the Miller Defendants in the state action, in particular for allegedly committing a fraud upon the state court.  In particular, Plaintiff alleges that the Balanoff and Lieberman Defendants made false representations in the Foreclosure Action, such as that Rachel used personal rather than marital funds to fund the Miller Loan and that she intended to collect mortgage payments from SRI.  (Compl. ¶¶ 163-197.)

As discussed above, *Fiorilla v. Citigroup Global Markets, Inc.* forecloses these claims as they invite review of the state court judgment.  771 F. App'x 114, 115 (2d Cir. 2019) (barring claim for fraud upon the court where the damage identified was the state court judgment).  Moreover, Plaintiff presents conflicting narratives on whether the harm she complains of here occurred before or after the state court judgment.  At one point she says that her injury "already existed at the time the action was commenced," (Pl.'s Mem. in Opp. to Lieberman MTD at 16,) but later, in the course of opposing the Lieberman Defendants' argument that Plaintiff's proper recourse is to vacate the state court judgment, Plaintiff says that she "seeks monetary damages due to the injury she sustained as a *result* of the judgment."  (Pl.'s Mem. in Opp. to Lieberman

MTD at 18 (emphasis added).)   Such reasoning further supports a finding that *Rooker-Feldman* bars Plaintiff's claims against the Balanoff and Lieberman Defendants.

Furthermore, the Lieberman Defendants argue that the appropriate remedy for Plaintiff's claims against them is not to collaterally attack the judgment in federal court, but rather to move pursuant to CPLR § 5015 to vacate the state court judgment or to appeal the state court judgment, which avenue Plaintiff is currently pursuing. [7]  (Lieberman Defs.' Mem. in Supp. at 10.)  CPLR § 5015 provides in relevant part that "[t]he court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person with such notice as the court may direct, upon the ground of…fraud, misrepresentation, or other misconduct of an adverse party."  CPLR § 5015(a)(3).

The Lieberman Defendants cite to *Urias v. Daniel P. Buttafuoco & Assoc., PLLC*, which found that a plaintiff's remedy for an alleged violation of Judiciary Law § 487 and fraudulent conduct in another proceeding "lies exclusively in that lawsuit itself, i.e., by moving pursuant to CPLR 5015 to vacate the civil judgment due to its fraudulent procurement, not a second plenary action collaterally attacking the judgment in the original action." 173 A.D.3d 1244, 1246, 104 N.Y.S.3d 712 (2d Dep't 2019) (internal citations and quotations omitted); *see also Marshall v. Grant* 521 F. Supp. 2d 240, 246 (E.D.N.Y. 2007) (remedy for fraud committed in a legal proceeding "must be exercised in that lawsuit by moving to vacate the civil judgment (CPLR 5015(a)(3), and not by another plenary action collaterally attacking that judgment.") (quoting *St. Clement v. Londa*, 8 A.D.3d 89, 90 (1st Dep't 2004)).  Plaintiff argues that *Urias* is distinguishable because the plaintiff's claim there "was a challenge to attorney's fees awarded in

---

[7] The Balanoff Defendants raise similar arguments in the context of their *res judicata* discussion, though they do not explicitly invoke CPLR § 5015.  In any event, the Court will consider the argument on behalf of both sets of attorney defendants given that they are similarly situated.

a previous action where the attorney, although not a party to the previous action, was subject to the jurisdiction of the court in the prior action for purposes of determining his fee." (Pl.'s Mem. in Opp. to Lieberman MTD at 17.) Plaintiff further argues that there is an exception to the principle against collateral attack of a judgment—"a separate lawsuit may be brought where the alleged perjury or fraud in the underlying action was 'merely a means to the accomplishment of a larger fraudulent scheme' which was 'greater in scope than the issues determined in the prior proceeding." (Pl.'s Mem. in Opp. to Lieberman MTD at 18 (quoting *Newin Corp. v. Hartford Acc. & Indem. Co.*, 37 N.Y.2d 211 (1975); *Retina Assoc. of Long Is. v. Rosberger*, 299 A.D.2d. ,533 (2d Dep't 2002)).) The Court rejects Plaintiff's argument on the basis that there was no indication that either of those bases for distinguishing *Urias* is applicable here. Indeed, the Court agrees that the proper course of action is for Plaintiff to pursue these claims in the underlying action where she claims the alleged conduct occurred, as she is doing with her appeal of the state court action. *See All. Network, LLC v. Sidley Austin LLP*, 43 Misc. 3d 848, 858, 987 N.Y.S.2d 794 (N.Y. Sup. 2014) ("The First Department has held that a party's remedy for a violation of section 487 stemming from an attorney's actions in a litigation lies exclusively in that lawsuit itself,…not a second plenary action.") (internal citations and quotations omitted).

Accordingly, Plaintiff's claims for collusion and negligence against the Balanoff and Lieberman Defendants are barred by *Rooker-Feldman*. In any event, the proper avenue to raise these claims is in the state court proceeding itself. These claims are therefore dismissed.

E.  Count 13 (Legal Fees and Costs against all Defendants)

Plaintiff's thirteenth claim is for legal fees and costs she incurred because she "was required to defend the frivolous and fictitious Miller Foreclosure," which "was the proximate result of the fraud, deceit, misrepresentation, and negligence of the Defendants." (Compl. ¶¶

210-213.)  Although Plaintiff "litigated and lost on her legal fees and costs claims in state court," (Miller Defs.' Mem. in Supp. at 28), Plaintiff argues that this claim is "premised on conduct independent of the state court judgment and for which review and rejection of the judgment is not requested."  (Pl.'s Mem. in Opp. to Miller MTD at 22.)  As with many of the claims discussed above, however, this claim is premised on Defendants' allegedly fraudulent behavior in the Foreclosure Action and effectively a backdoor attempt to complain about the state court judgment.  Accordingly, this claim is barred by *Rooker-Feldman*.

V.    *Res Judicata*

The Miller and Balanoff Defendants argue as an additional basis for dismissal that Plaintiff's claims are barred by *res judicata*.  As noted above, the Court has already determined that the claims against the Miller and Balanoff Defendants are barred by the forum selection clause in the Hansen Agreement and/or *Rooker-Feldman*.  The Court considers the arguments regarding *res judicata* as an additional basis for dismissal.

*Res judicata* provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  As the Second Circuit explained in *Marcel Fashions Group, Inc. v. Lucky Brand Dungarees, Inc.,* 779 F.3d 102 (2d Cir. 2015):

> The term *res judicata*, which means essentially that the matter in the controversy has already been adjudicated, encompasses two significantly different doctrines: claim preclusion and issue preclusion.  Under claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.  The doctrine precludes not only litigation of claims raised and adjudicated in a prior litigation between the parties (and their privies), but also of claims that might have been raised in the prior litigation but were not.  The doctrine of issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.

*Marcel,* 779 F.3d at 107, 108 (citations and internal quotation marks omitted).

Res judicata applies where: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't. of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000) (citation omitted).

In sum, under the res judicata doctrine, "'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if [the claims are] based upon different theories'" or asserted against new parties in privity to the parties in the prior litigation. *See Sosa v. JP Morgan Chase Bank,* 33 A.D.3d 609, 611, 822 N.Y.S.2d 122 (2d Dep't 2006) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981)); *see also Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) ("Under both New York and federal law, the doctrine of *res judicata*, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") (internal quotation marks omitted); *Houdet v. U.S. Tennis Ass'n*, 2014 WL 6804109, at *4 (E.D.N.Y. Dec. 3, 2014) (finding res judicata applies "not just to the parties in a prior litigation but also to those in privity with them" where the "new defendants have a sufficiently close relationship to justify [its] application"), *aff'd sub nom. Houdet v. Brewer*, 627 F. App'x 37 (2d Cir. 2016).

New York "has adopted a transactional approach to res judicata, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citing *Smith v. Russell Sage Coll.*, 54 N.Y.2d 185 (1981)).

*A.   Adjudication on the Merits*

First, the judgment issued in the Foreclosure Action is an adjudication on the merits,

determining that the Rachel Mortgage was a valid and enforceable mortgage with priority over

the Hansen Loan.  Plaintiff argues the judgment is not entitled to preclusive effect because it is

based on a default judgment that was fraudulently obtained.  Specifically, Plaintiff refers to

SRI's failure to raise a defense to Rachel's motion for summary judgment, which she claims was

"orchestrated by Balanoff" to lead to an "intentional default."  (Pl.'s Mem. in Opp. to Balanoff

MTD at 19; Pl.'s Mem. in Opp. to Miller MTD at 24.)

The Balanoff and Miller Defendants argue that even though SRI did not raise a defense to

Rachel's motion, the decision was not in fact a default judgment, and "Justice McCormack could

not have awarded Rachel summary judgment if she had been unable to establish her *prima facie*

case." (Balanoff Defs.' Mem. in Supp. at 15; Balanoff Defs.' Mem. in Rep. [ECF No. 55-4] at 5-

6; Miller Defs.' Mem. in Rep. [ECF No. 45] at 8-9.)  Moreover, Plaintiff was given an

opportunity to, and indeed did, contest Rachel's motion for summary judgment.  (Balanoff Defs.'

Mem. in Rep. at 5; Miller Defs.' Mem. in Rep. 9.)  Thus, as the Balanoff Defendants point out

"Justice Peck could have made his own assessment as to the validity of the mortgage if the

testimony of the parties warranted a different result."  (Balanoff Defs.' Mem. in Supp. at 16.)

Accordingly, the Court is satisfied that the Foreclosure Judgment is entitled to preclusive effect.

*B.   Privity*

There is no question that Rachel was a party to the Foreclosure Action; thus the only

issue to be resolved is whether the Balanoff Defendants were in privity with SRI such that the

claims against them in this action should be barred by res judicata.

"Under New York and federal law…concepts summarized by the term privity are looked to as means of determining whether the interests of the party against whom claim preclusion is asserted were represented in prior litigation." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995). Privity "includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action." *Ruiz v. Comm'r of Dep't or Transp.*, 858 F.2d 898, 903 (2d Cir. 1988) (internal citations and quotations omitted).

The Balanoff Defendants are in privity with SRI given their attorney-client relationship. *See Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 701 (S.D.N.Y. 2014). Furthermore, Plaintiff identifies the Balanoff Defendant's interests as being aligned with those of SRI and indeed describes them as having "colluded" in the Foreclosure Action. Accordingly, *res judicata* applies to the claims against the Balanoff Defendants.

### C. Same Claims

Finally, as noted in the *Rooker-Feldman* discussion above, the claims asserted in this action were raised in some fashion in the Foreclosure Action. To the extent the exact claims were not raised in the Foreclosure Action, all of the claims brought in this action could very well have been.

Plaintiff argues that the claims in this action involve different causes of action than what was litigated in the Foreclosure Action. (Pl.'s Mem. in Opp. to Miller MTD at 24.) With respect to the fraud claims, Plaintiff argues that the fraud alleged here is different from the fraud alleged in the Foreclosure Action: "The fraud complained of here, although an extension of the fraud alleged in the foreclosure action, involves a different transaction-that of actually *enforcing* the Miller Mortgage and doing so through a judicial proceeding that effectively extinguished

Plaintiff's rights." (Pl.'s Mem. in Opp. to Miller MTD at 25 (emphasis in original).) Given the transactional view of claims for *res judicata* purposes as discussed above, the Court fails to see how the fraud claims here are distinct from the fraud alleged in the underlying action. Indeed, by Plaintiff's own admission, the fraud claims here are an "extension" of the fraud in the Foreclosure Action. Furthermore, as discussed in the *Rooker-Feldman* section above, the Second Circuit has barred fraud claims raised in a subsequent action on the basis of *res judicata* to the extent they are not barred by *Rooker-Feldman. See Worthy-Pugh,* 664 F. App'x at 22. The same reasoning applies here to bar Plaintiff's new claims that are mere "extensions" of her earlier state court claims.

Plaintiff's arguments that her other claims in this action could not have been litigated in the earlier action are similarly unconvincing and lend support to the conclusion that Plaintiff's claims are barred by *Rooker-Feldman* and/or *res judicata.* For example, Plaintiff argues that her fourth cause of action "is not barred by *res judicata* because it does not seek to re-litigate the Foreclosure Judgment, but rather to declare that the result of the foreclosure judgment is that Plaintiff's lien re-attaches to the Premises." (Pl.'s Mem. in Opp. to Miller MTD at 26.) Similarly, with respect to her quasi contract claims, Plaintiff now argues that these claims "only came into existence as a result of the fraudulently procured foreclosure judgment" despite earlier arguing, for purposes of escaping *Rooker-Feldman*, that she was complaining of injury "caused by the Miller Defendants that (i) are independent of and (ii) have not derived from the state court judgment." (*Id*. at 22.) Whichever the case may be, the claims are barred, either by *Rooker-Feldman* or *res judicata*.

Accordingly, the claims against the Balanoff and Miller Defendants are barred by *res judicata*.

VI.     *Collateral Estoppel*

The Balanoff and Lieberman Defendants argue as an additional basis for dismissal that Plaintiff's claims are barred by collateral estoppel.  As noted above, the Court has already determined that the claims against the Balanoff and Lieberman Defendants are barred by *Rooker-Feldman*.  The Court considers the arguments regarding collateral estoppel as an additional basis for dismissal.

Collateral estoppel, or issue preclusion, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be litigated between the same parties in any future lawsuit."  *Schiro v. Farley*, 510 U.S 222, 232, 114 S. Ct. 783, 790, 127 L. Ed. 2d 47 (1994) (internal citations omitted).  Two requirements must be met for collateral estoppel to apply: (1) An identical issue was necessarily decided in the prior action and is decisive of the present action and (2) there was a full and fair opportunity to contest that prior determination.  *Buechel v. Bain*, 97 N.Y.2d 295, 303-304, 766 N.E.2d 914 (2001).  "The litigant seeking the benefit of collateral estoppel must demonstrate that the decisive issue was necessarily decided in the prior action against a party, or one in privity with a party."  *Id.*

All three sets of defendants argue that the claims raised in this action are the same as those raised in the Foreclosure action.  (Balanoff Defs.' Mem. in Supp. at 18; Lieberman Defs.' Mem. in Supp. at 16; Miller Defs.' Mem. in Supp. at 9-10.)  As discussed in the *res judicata* analysis above, the issues presented in this litigation are duplicative of issues decided in the Foreclosure Action, which Plaintiff had an opportunity to, and in fact did, litigate.  The Court agrees that the "central issue underlying each of these claims is Plaintiff's contention that Rachel's mortgage was not valid and enforceable."  (Lieberman Defs.' Mem. in Supp. at 16.)  In opposition, Plaintiff raises the same argument she raised in objection to *res judicata*, that the

validity of the Miller Mortgage is not entitled to preclusive effect because it was granted on default.  (Pl.'s Mem. in Opp. to Lieberman Defs.' at 23.)  As discussed above, however, the validity of the Miller Mortgage was not obtained through a default judgment and is entitled to preclusive effect as Plaintiff had an opportunity to litigate the issue.

Having found that all claims in this action are dismissed by virtue of the forum selection clause in the Hansen Agreement, the *Rooker-Feldman* doctrine, *res judicata*, and/or collateral estoppel, the Court need not consider the alternate bases for dismissal presented by Defendants. Furthermore, the proper forum for Plaintiff's claims lies directly in the state court action, and she is already pursuing an appeal there.

## CONCLUSION

For the foregoing reasons, Defendants' Rules 12(b)(1), 12(b)(3), and 12(b)(6) motions to dismiss are granted and the claims are dismissed.  The Clerk of Court is directed to enter judgment and close the case.

**SO ORDERED.**

Dated: Central Islip, New York               s/ Denis R. Hurley
      September 29, 2020               Denis R. Hurley
                                       United States District Judge